(3; Misc. Rep. 574.)

## SANDERS v. SAXTON et al.

(Supreme Court, Special Term, Kings County. December, 1901.)

1. TAXATION—LANDS OF NONRESIDENTS—ASSESSMENT.

　　Unoccupied lands of a nonresident and the name of the owner were set out in the part of the assessment roll applicable to residents, and the letters "N. R." were inserted between the first and second columns of the resident roll, with a note attached stating that all property marked "N. R." was held by nonresidents, and was to be considered as entered in a separate part of the assessment roll from the other assessments. *Held* not to make the taxes levied under the assessment a lien on the land; 1 Rev. St. marg. p. 391, § 11, providing that lands of nonresidents shall be designated in the same assessment roll, but in a separate part from the other assessments.

2. SAME—CURATIVE ACT.

　　Laws 1885, c. 411, purporting to legalize and confirm taxes on the lands of nonresidents of K. county, cannot legalize or confirm such taxes as never became a lien.

**3. SAME—SALE—DEED—CONCLUSIVENESS.**

    Where lands of nonresidents were improperly assessed in K. county, so that the assessment created no lien, and were sold by the state comptroller to the state, the sale was void; and the deed of the comptroller was not rendered valid by Acts 1855, c. 427, § 65, as amended by Laws 1885, c. 448, and made applicable by Laws 1891, c. 217, to such county, making such deeds conclusive evidence of the regularity of the proceedings prior thereto, as those statutes relate only to land assessed in the nonresident part of the assessment roll, and not to lands of nonresidents erroneously assessed in the resident roll, as were the lands in controversy.

**4. QUIETING TITLE—TAX DEED.**

    A nonresident owner may sue the state comptroller and the commissioners of the land office to remove a cloud on title created by a tax deed made by the state comptroller to the state.

Action by Joshua C. Sanders against Charles T. Saxton and others, commissioners of the land office, and the state comptroller, to remove a cloud on title on real estate. Judgment for plaintiff.

Edwin S. Hunt, for plaintiff.

John C. Davies, Atty. Gen., for defendants.

GAYNOR, J. The land was returned to the state comptroller and sold as though the unpaid taxes had been assessed and made a lien upon it; but they had not been. The statute required that the names of the taxable inhabitants and their lands be set down in the assessment roll in a prescribed manner, and that the "lands of non-residents shall be designated in the same assessment roll, but in a part thereof separate from the other assessments" (1 Rev. St. marg. p. 391, § 11), in another prescribed manner. And in the former case the lands are not assessed, but only the inhabitants, while in the latter the lands alone are assessed. The land in question was unoccupied, and belonged to a non-resident. It was not set down or assessed at all in the non-resident part of the roll, but the owner's name and the land were set down in the other part with the taxable inhabitants and their lands in the usual way. The letters "N. R." were set down between the name in the first column and the entry of the land in the next, however, and at the end of the roll there was a note that "all property in preceding pages marked N. R. is held by non-residents and is to be considered as entered in a separate part of the assessment roll from the other assessments." But it was not so entered. The assessors evidently wanted that to be deemed as done which they had not done; but of course that is impossible. Land was not and could not be assessed in the resident part. It was only non-resident land that could be assessed at all, and that in the way prescribed by law, and upon which a lien could be acquired under which it could be sold. 1 Rev. St. marg. p. 390 (Laws 1855, c. 427).

Section 1 of chapter 411 of the Laws of 1885 purports to legalize and confirm "taxes * * * on lands of non-residents" in the towns of Kings county, "whether said lands were entered in the several assessment rolls separately as the lands of non-residents, or otherwise." The taxes here in question were not in form assessed upon the land at all. If they had been, even though in the wrong part of the assessment roll, this curative act would in terms cover them, but

as it is it does not. It only purports to validate taxes in form laid on non-resident lands, whether in the wrong part of the roll or not. It does not purport to validate taxes not so in form laid, i. e., taxes not in form laid on the land, but only laid against individuals. If the intention was to change these latter into liens on land, it should have been so stated. The forms and requirements for assessing non-resident lands are materially different to those assessing the taxable inhabitants (Sanders v. Downs, 141 N. Y. 422, 36 N. E. 391); and these latter forms were the only ones complied with.

It follows that there was no lien cast on this land, and that the sale and conveyance by the comptroller were void. But it is claimed that by section 65 of the said act of 1855 (as amended by chapter 448 of the Laws of 1885, and made applicable to Kings county by chapter 217 of the Laws of 1891), the said conveyances have become valid, and also conclusive evidence of a valid title thereunder in the grantee therein, viz., the state. The said section as so amended in 1885 provides that "all such conveyances that have been heretofore executed by the comptroller * * * after having been recorded for two years in the office of the clerk of the county" where the land is situated "shall, six months after this act takes effect, be conclusive evidence that the sale and all proceedings prior thereto, from and including the assessment of the land and all notices required by law to be given previous to the expiration of the two years allowed by law to redeem, were regular and were regularly given" etc., "and all other conveyances or certificates heretofore or hereafter executed or issued by the comptroller * * * shall be conclusive evidence thereof from and after the expiration of two years from the date of recording such conveyance."

But this does not apply to the present case at all. The conveyances therein referred to are by the express words of the statute only conveyances of lands assessed as non-resident. The comptroller could not by selling other lands bring them under the said statute. No lien is obtained on any other lands, and the comptroller is empowered to sell no other. Whether we look at the scheme, or the express words, of the said act of 1855, we find that it relates wholly to lands set down in the non-resident part of the assessment roll; and that is the only place in which lands could be assessed at all. If the comptroller were to sell my land although I was a resident, and my name set down and assessed in the resident list, and my land was therefore not assessed at all (as indeed it could not be), would this statute apply? No more does it apply to the present case, where the owner though a non-resident was set down in the resident list, and his land was not set down in the non-resident list and assessed at all. If the land has been assessed, or, it may be, if there has been an attempt to assess it in due form, then the conveyance becomes conclusive evidence of a good title in the manner prescribed and after the time limited; otherwise the entire act is wholly inapplicable as appears from both its scheme and its express words.

That this action is maintainable against the state officials though not against the state has been heretofore decided. 33 Misc. Rep. 389, 67 N. Y. Supp. 680.

Judgment for the plaintiff.